# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KAMALA EDWARDS,

    Plaintiff,

    v.

MONTGOMERY COLLEGE and
PRESIDENT AND BOARD OF TRUSTEES,
MONTGOMERY COUNTY COMMUNITY
COLLEGE,

    Defendants.

Civil Action No. TDC-17-3802

## MEMORANDUM OPINION

Plaintiff Kamala Edwards has filed this civil action against Defendants Montgomery College and the President and Board of Trustees of Montgomery County Community College, alleging that Defendants failed to provide her with reasonable accommodations and retaliated against her for engaging in protected equal employment opportunity ("EEO") activity while she worked as an English professor at Montgomery College, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117 (2012), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (2012), and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20–606 (LexisNexis 2014).

Now pending is Defendants' Motion to Dismiss the Amended Complaint. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are presented in the light most favorable to Edwards, the non-moving party:

## I. Requests for Reasonable Accommodations

Dr. Kamala Edwards began her work as a professor at Montgomery College in Rockville, Maryland in 1989. On or about September 17, 2002, Edwards fell in an elevator on Montgomery College's Rockville Campus, tearing her patella. Edwards's torn patella, combined with her rheumatoid arthritis, limited her ability to walk long distances. Thus, from that time forward, Edwards routinely requested a reasonable accommodation that all of her classes be scheduled in the same building. Until 2013, Defendants substantially complied with that request. Then, from 2013 to 2017, on four separate occasions, Defendants scheduled her classes in different buildings or in classrooms in the same building that were far apart. Each of these incidents relates to one or more counts in the Amended Complaint.

### A. Count I

In February 2013, Edwards received her class schedule and noted that one of her classes was scheduled in the "SB" Building while the other was scheduled in the Humanities Building. Am. Compl. ¶ 19, ECF No. 11. Edwards requested that all of her classes be moved into the Humanities Building, but Defendants failed to grant that request. As a result of having to walk between buildings for her classes, Edwards fell and injured her knee on May 28, 2013 while walking up a ramp to the SB Building.

### B. Count II

In August 2014, when Edwards had recovered from her fall and was prepared to return to work, she submitted a doctor's note that stated, "Please allow patient to park near office – limited

walking – all classes in same Bldg." Am. Compl. ¶ 51, ECF No. 11; Doctor's Note at 1, Compl. Ex. 5, ECF No. 1-5. Before classes began, all of Edwards's classes were scheduled in the same building, but her classroom assignments were arranged such that she had to walk over 500 feet to get from one class to the next. Edwards requested that all of her classes be scheduled in the same room, but Defendants did not change her schedule. In October 2014, Edwards met with Elizabeth Benton, the chair of the English Department, to discuss the matter. Rather than comply with her request, Benton and Human Resources Specialist Lori Stegeman suggested that she update her doctor's note to reflect that all of her classes need to be in the same room and offered to provide her with a wheelchair or a scooter.

### C.       Count III

In January 2015, Edwards's teaching schedule again included a class in the SB Building while the rest of her classes were in the Humanities Building. The Humanities Building classes were scheduled on different floors. Edwards emailed Stegeman requesting that Defendants comply with her accommodation request. Stegeman wrote back that the English Department was doing its best to accommodate Edwards, and that if she needed a more specific accommodation, she should update her doctor's note.

### D.       Counts IV and V

Finally, in January 2017, Edwards received her class schedule for the spring semester. Although all of her classes on any given day would be in classrooms on the same floor of the Humanities Building, she would be required to walk the full length of the hallway between classes. On January 23, 2017, Edwards emailed Benton, Stegeman, and Rodney Redmond, the Dean of English and Reading, to request that all of her classes be scheduled in the same or adjoining rooms. Redmond replied that her requested accommodation had been met and that she

would need a new doctor's note if she needed a more specific accommodation. On February 3, 2017, Edwards then wrote to Robert Roop, the Interim Chief Human Resources Officer, to complain about the failure to grant her requested accommodation and noted that requests for classroom changes made by other English professors without disabilities had been granted. She also noted that her classrooms either did not have a chair for her or had chairs and stools that were defective or hazardous. No changes were made to her schedule, and no additional or replacement chairs were provided.

## II.     Procedural History

On or about December 17, 2014, following the August 2014 incident, Edwards filed an internal EEO complaint, alleging discrimination on the basis of disability, age, race, national origin, and sex, as well as reprisal. Pursuant to Montgomery College's EEO policy, the complaint was investigated through an independent third party, HR ANEW. On July 29, 2015, Edwards was informed that her claim was not sustained. Edwards appealed the decision and received notice on September 5, 2015 that her appeal had been denied.

On or about November 23, 2015, Edwards filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), Baltimore Field Office. Her complaint was processed on February 2, 2016, and her formal charge was filed on May 16, 2016. On January 26, 2017, Edwards contacted the EEOC Baltimore Field Office to update her investigator about the January 2017 incident. She physically visited the Baltimore Field Office in April 2017 to follow up on her complaint. On April 27, 2017, Defendants filed their position statement with the EEOC. Edwards also filed a position statement and a rebuttal, and the parties participated in a fact-finding conference on August 14, 2017 at which Edwards was represented by counsel. On

September 29, 2017, Edwards received notice of her right to file suit in federal court. She filed her original Complaint in this case on December 26, 2017.

In her Amended Complaint, Edwards asserts five counts: (I) disability discrimination under Title I of the ADA, the Rehabilitation Act, and the MFEPA based on the failure to provide a reasonable accommodation in May 2013; (II) disability discrimination under the same statutory provisions based on the failure to provide a reasonable accommodation in August 2014; (III) disability discrimination under the same statutory provisions based on the failure to provide a reasonable accommodation in January 2015; (IV) unlawful retaliation under the Rehabilitation Act, based on the failure to provide a reasonable accommodation in January 2017; and (V) disability discrimination under the ADA, Rehabilitation Act, and MFEPA based on the failure to provide a reasonable accommodation in January 2017.

## DISCUSSION

In its Motion to Dismiss, Defendants assert six separate arguments: (1) the ADA claims in Counts I-V are barred by the Eleventh Amendment to the United States Constitution; (2) Counts I-III are time-barred by the applicable statute of limitations; (3) the ADA claims in Counts IV and V must be dismissed because Edwards failed to exhaust administrative remedies; (4) the MFEPA claims in Counts I-V must be dismissed because Edwards failed to plead compliance with the notice provisions of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5–304 (LexisNexis 2013); (5) Counts I-V fail to state a claim of disability discrimination or retaliation, as applicable; and (6) any claim against the President of Montgomery College must be dismissed for failure to state a claim.

In Edwards's memorandum in opposition to the Motion to Dismiss, she acknowledges that the Montgomery College President is an improper defendant and clarifies that the sole

Defendant in this case is "Montgomery County Community College." Opp'n Mot. Dismiss at 1 n.1, ECF. No. 13-1. Edwards also concedes that all causes of action brought under Counts I and II, as well as the MFEPA claim asserted in Count III, are barred by the statute of limitations. *Id.* at 11 n.4, 13 n.5. She further concedes that the ADA claims in Counts IV and V are barred by her failure to exhaust administrative remedies and acknowledges that any claim for damages pursuant to her ADA claim in Count III is barred by Eleventh Amendment immunity. *Id.* at 13 n.6, 14. Thus, the Court need only address the arguments relating to the Rehabilitation Act claims in Counts III, IV, and V; the MFEPA claims in Counts IV and V; and the ADA claim in Count III, to the extent that it seeks injunctive relief.

## I.    Legal Standards

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Claims may be dismissed as time-barred on a Rule 12(b)(6) motion only if "the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

When deciding a motion to dismiss, a court may "take judicial notice of matters of public record" and may consider exhibits submitted with the motion "so long as they are integral to the

complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Should the court consider exhibits that do not fall into either of these categories, the motion must be construed as a motion for summary judgment. Fed. R. Civ. P. 12(d). With their briefs, the parties have submitted the following exhibits: (1) the EEOC charge document that Edwards filed on May 6, 2016; (2) Defendants' position statement submitted to the EEOC; and (3) the EEOC notice of the fact finding conference held August 14, 2017. None of these exhibits are integral to the Complaint. Accordingly, the Court will not consider them in its analysis of the pending Motion to Dismiss.

## II. Eleventh Amendment

Defendants argue that Edwards's claims against Montgomery College for disability discrimination under Title I of the ADA are barred by the Eleventh Amendment. As discussed above, the sole remaining ADA claim is alleged in Count III.

The Eleventh Amendment bars suits for damages filed in federal court against a state government, whether by citizens of that state or another, absent congressional abrogation of the states' sovereign immunity relating to a particular cause of action. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). The United States Supreme Court has held that Congress has not abrogated sovereign immunity for ADA Title I claims. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 & n.9 (2001); *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).

Montgomery College, whose Board of Trustees is appointed by the Governor of Maryland, is a state entity for purposes of sovereign immunity. See Md. Code Ann., Educ. § 16–411(a) (LexisNexis 2014); *Bd. of Trustees v. John K. Ruff*, 366 A.2d 360, 363-64 (1976) (holding that "there is no doubt" that the Board of Trustees of Howard County Community

College "is an agency of the state" for purposes of sovereign immunity); *see also Samuels v. Tschechtelin,* 763 A.2d 209, 230 (Md. Ct. Spec. App. 2000) ("The [Baltimore City Community] College, along with its governing Board, is a State agency afforded the protections of sovereign immunity."); *Adams v. Montgomery Coll.*, No. CIV. A. DKC 09-2278, 2010 WL 2813346, at *4 (D. Md. July 15, 2010) (holding that Montgomery College is a state entity for purposes of sovereign immunity). Accordingly, to the extent that Edwards seeks damages from Montgomery College under Title I of the ADA, her suit is barred by sovereign immunity.

Nevertheless, the Eleventh Amendment does not necessarily shield a state entity from suits for injunctive relief. In *Garrett*, the Court stated that while "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I," that provision "still prescribes standards applicable to the States," and "[t]hose standards can be enforced . . . by private individuals in actions for injunctive relief under *Ex parte Young*." *Garrett*, 531 U.S. at 374 n.9. Thus, the disputed issue is whether Edwards actually seeks injunctive relief in her ADA claim in Count III.

Even viewing the Amended Complaint in the light most favorable to Edwards, the Court finds no viable request for injunctive relief in Count III. First, the Amended Complaint does not explicitly seek injunctive relief or any other specific equitable remedy relating to Count III. Its "prayer for relief" seeks compensatory damages, attorney's fees, costs and interest, and generally asks for "all other relief the Court deems equitable." Am. Compl. at 17. Second, where Count III arises out of classroom assignments in January 2015 for the Spring 2015 semester, any request for injunctive relief to alter those class assignments, after the passage of at least six semesters, would now be moot. At this point, any available prospective relief would likely be dependent on the existence of more recent violations, such as the alleged failure to accommodate

in January 2017 asserted in Count V. Indeed, it is not even clear whether Edwards still works at Montgomery College such that injunctive relief on her behalf would be warranted.

Accordingly, because Edwards's ADA claim in Count III for damages is barred by the Eleventh Amendment, and Edwards makes no viable request for injunctive relief stemming from that claim, the ADA claim in Count III is dismissed.

## III.    Statute of Limitations

Defendants argue that, because Edwards filed this suit more than two years after the January 2015 events in Count III, the ADA and Rehabilitation Act claims asserted in that count are time-barred. Because the Court has dismissed the ADA claim on other grounds, it will address the statute of limitations only as to the Rehabilitation Act claim in Count III. Edwards does not dispute that she filed suit more than two years after the accrual of her Count III claim. Rather, she argues that the statute of limitations for Rehabilitation Act claims is three years, not two years.

Section 504 of the Rehabilitation Act does not contain its own statute of limitations, so courts must apply the statute of limitations from the most analogous state law cause of action. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). While the most analogous state statute need not be identical, it must provide substantially the same rights and remedies. *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 224-25 (4th Cir. 1993). Where all of the events in this case occurred in Maryland, the Court looks to Maryland law to identify the most analogous state law cause of action. Defendants argue that the MFEPA, which has a two-year statute of limitations, is the most analogous. Md. Code Ann., State Gov't § 20–1013(a)(3). Edwards, however, contends that the Rehabilitation Act should be treated as a general civil cause of action, for

which Maryland has established a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5–101.

Historically, judges in this District have applied Maryland's general three-year statute of limitations to employment discrimination claims brought under both the Rehabilitation Act and the ADA. *See, e.g., Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 251 (D. Md. 2004) (Rehabilitation Act); *Ross v. Bd. of Educ. of Prince George's Cty.*, 195 F. Supp. 2d 730, 735 n.2 (D. Md. 2002) (Rehabilitation Act); *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 634 (D. Md. 2002) (ADA); *Kohler v. Shenasky*, 914 F. Supp. 1206, 1211 (D. Md. 1995) (ADA and Rehabilitation Act). All of these cases, however, were decided before Maryland enacted significant amendments to its Anti-Discrimination Law in 2007, which created a private right of action for employment discrimination complaints brought under the MFEPA. *See* H.B. 314, 2007 Leg., 423rd Sess. (Md. 2007). The amendments granted employment discrimination complainants the right to file a civil action in Maryland circuit court after first filing an administrative complaint with the Maryland Human Relations Commission ("MHRC") and waiting 180 days, regardless of the outcome of the MHRC process. *Id.* They provided for remedies including compensatory damages, back pay, punitive damages, and equitable relief. *Id.* Substantively, the statute remains the same today, despite technical amendments in 2009 and 2010 aimed at clarifying that the private cause of action only applies to *employment* discrimination claims, not other types of discrimination claims. *See* H.B. 54, 2009 Leg., 426th Sess. (Md. 2009); S.B. 470, 2010 Leg., 427th Sess. (Md. 2010); Md. Code Ann., State Gov't § 20–1013(a) (stating that "a complainant may bring a civil action against the respondent alleging an unlawful employment practice"); *id.* § 20–1001 (stating that "'unlawful employment practice'

means an act that is prohibited under § 20–606 of this title"); *id.* § 20–606(a)(1)(i) (prohibiting employment discrimination on the basis of disability).

The United States Court of Appeals for the Fourth Circuit has not squarely addressed whether the private right of action for employment discrimination claims established by the amendments to Maryland's Anti-Discrimination Law is now the most analogous state statute to the employment discrimination provision of the Rehabilitation Act for statute of limitations purposes. In 2014, in an unpublished opinion, the Fourth Circuit, citing pre-2007 district court case law, applied the three-year general statute of limitations to Rehabilitation Act and ADA employment discrimination claims. *Jeandron v. Bd. Regents Univ. Sys. Md.*, 510 F. App'x 223, 226 (4th Cir. 2013). In *Jeandron*, however, the court was not presented with the question whether the MFEPA's two-year statute of limitations should apply. *See id.*

In 2017, however, the Fourth Circuit addressed the similar question of whether the Maryland Anti-Discrimination Law's two-year limitations period applies to a claim under Title II of the ADA for disability discrimination in public accommodations. *See Semenova v. Maryland Transit Administration*, 845 F.3d 564, 568 (4th Cir. 2017); *see also A Soc'y Without a Name*, 655 F.3d at 347-48 (holding that in determining the applicable statute of limitations, the "same substantive analysis" applies to both the ADA and Rehabilitation Act because "the language of the two statutes is substantially the same"). In *Semenova*, the plaintiff, who suffered from cerebral palsy, brought a public accommodations claim under Title II, alleging that operators on the Maryland Transit Administration's commuter bus service failed to assist her in boarding the bus. *Id.* at 566. In holding that Maryland's three-year statute of limitations for general civil claims applied, rather than the Maryland Anti-Discrimination Law's two-year statute of limitations, the court reasoned that while the Maryland law provides a cause of action for

disability discrimination in housing or employment, it does not provide such a claim relating to "the provision of *public services*." *Semenova*, 845 F.3d at 567-68 (emphasis added). Significantly, in concluding that it could rely upon pre-2009 precedent for applying the general three-year statute of limitations, the court specifically noted that while the amendments created a cause of action for employment discrimination, there was no amendment authorizing a claim for disability discrimination in public services.[1] *Id.* at 568.

Thus, *Semenova* strongly suggests that where the Maryland Anti-Discrimination Law now provides a cause of action for employment discrimination based on disability, that statute's two-year statute of limitations would apply if the Maryland cause of action provides substantially similar rights and remedies as the Rehabilitation Act. *See id.* Indeed, the two statutes both provide similar causes of action for employment discrimination based on a failure to provide a reasonable accommodation of a disability. *Compare* 29 U.S.C. § 794(d) (incorporating the standards under Title I of the ADA for employment discrimination claims brought under the Rehabilitation Act) *and* 42 U.S.C. § 12112(b)(5)(A) (Title I of the ADA) (stating that an employer may not fail to make "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability") *with* Md. Code Ann., State Gov't § 20–606(a)(4) (stating that an employer may not "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee").

To establish a *prima facie* case for such a claim under the Rehabilitation Act, a plaintiff must show that (1) the plaintiff qualifies as an "individual with a disability" as defined in 29

---

[1]    The Court in *Semenova* referenced 2009, not 2007, as the year of the relevant amendment to the MFEPA, perhaps because it was not until 2009 that the Maryland General Assembly enacted technical amendments to its Anti-Discrimination Law to clarify that only employment discrimination claims under MFEPA, not other forms of discrimination claims, may be the subject of a private cause of action. *See* H.B. 54, 2009 Leg., 426th Sess. (Md. 2009).

U.S.C. § 705(20); (2) the defendant had notice of the disability; (3) the plaintiff could perform the essential functions of the job with a reasonable accommodation; and (4) the defendant refused to make any reasonable accommodation. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015). Likewise, the MFEPA requires the same four elements to establish a *prima facie* case of disability-based employment discrimination. *Adkins v. Peninsula Reg'l Med. Ctr.*, 119 A.3d 146, 160 (Md. Ct. Spec. App. 2015), *aff'd*, 137 A.3d 211 (Md. 2016). Moreover, the Rehabilitation Act and MFEPA offer similar remedies, including compensatory damages and injunctive relief. *See* 29 U.S.C. § 794a (incorporating the remedies available under Title VI of the Civil Rights Act of 1964 for violations of Section 504 of the Rehabilitation Act); *see Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 70 (1992) (holding that compensatory damages are available under Title VI and the Rehabilitation Act); *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) (holding that damages and injunctive relief are available under Title VI) ; Md. Code Ann., State Gov't §§ 20–1009(b), 20–1013(d)-(e). Accordingly, the Court finds that the MFEPA is the most analogous state law cause of action to Edwards's Rehabilitation Act claim, such that the MFEPA's two-year statute of limitations applies. *See Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. RDB-16-3394, 2017 WL 3608181, at *3-4 (D. Md. Aug. 22, 2017) (holding that the MFEPA is the most analogous state law cause of action to a claim of disability discrimination in employment under the Rehabilitation Act, such that the MFEPA's two-year statute of limitation applies such a claim).

Here, where Count III is based on an alleged failure to accommodate a disability in January 2015, and Edwards did not file her lawsuit until December 26, 2017, the Rehabilitation Act claim in Count III will be dismissed as time-barred.

## IV.     LGTCA

Defendants assert that Edwards's remaining MFEPA claims in Counts IV and V should be dismissed because Edwards failed to comply with the Maryland Local Government Tort Claims Act ("LGTCA") and failed to affirmatively plead such compliance.  Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within one year after the injury."  Md. Code Ann., Cts. & Jud. Proc. § 5–304(b)(1).  The LGTCA requires that, for a claim based on events in Montgomery County, any notice of the claim must be provided to the County Executive.  *Id.* § 5–304(c)(3)(ii).  For purposes of the LGTCA, a "local government" is defined as including a "community college or board of trustees for a community college established or operating under Title 16 of the Education Article, not including Baltimore City Community College."  *Id.* § 5–301(d)(9).  Montgomery College and its Board of Trustees are specifically referenced in Title 16, with the Board of Trustees established pursuant to its provisions.  *See* Md. Code Ann., Educ. §§ 16–101, 16–411.  Thus, although the Court recognizes the oddity of classifying Montgomery College as a state entity for purposes of the Eleventh Amendment and a local government for purposes of the LGTCA, the relevant statutes compel the conclusion that Montgomery College qualifies as a "local government" for purposes of the LGTCA.

Edwards does not dispute the applicability of the LGTCA to claims brought against Montgomery College.  Rather, she argues that she complied with the LGTCA by verbally communicating her MFEPA claim to her Department Chair, Elizabeth Benton, on October 15, 2014; filing an internal EEO complaint on December 17, 2014; and filing an EEOC complaint on November 23, 2015.  Edwards also argues that by recounting these actions in the Amended

14

Complaint, she affirmatively pleaded compliance with the LGTCA. In the alternative, she argues that the LGTCA's exception to its notice requirement contained in section 5-304(d) of the Courts and Judicial Proceedings Article of the Maryland Code applies because Defendants have not been prejudiced by her failure to give notice and good cause exists for the lack of notice.

### A. Pleading Requirement

As a threshold matter, Defendants argue that the LGTCA claims should be dismissed because Edwards did not state in her Complaint that she complied with the LGTCA notice requirement. Compliance with the LGTCA is a condition precedent to maintaining suit against a local government. *Rios v. Montgomery County*, 872 A.2d 1, 14 (Md. 2005). As a result, a plaintiff is required, in the complaint, to plead compliance with the notice provision of the LGTCA. *Hansen v. City of Laurel*, 25 A.3d 122, 137 (Md. 2011). Failure to do so plead subjects a plaintiff to dismissal. *Id.* at 131 (citing Maryland Rule 2–303b, which states that "[a] pleading shall contain . . . such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense"). In this case, where the Amended Complaint makes no mention of the LGTCA or the provision of LGTCA notice to Defendants, Edwards has not affirmatively pleaded compliance with the notice requirement. Under *Hansen*, this pleading deficiency alone is grounds for dismissal. *Hanson*, 25 A.3d at 137. Because, under certain circumstances, a court might grant leave to amend to correct this deficiency, *see id.* at 134-35. the Court will consider whether Edwards actually complied with the LGTCA in order to determine whether such leave should be granted.

### B. Strict Compliance

The notice requirement of the LGTCA is a condition precedent to maintaining an action, such that a suit under the LGTCA is "fatally flawed if the condition is not satisfied." *Rios*, 872

A.2d at 14. The purpose of the requirement is to provide the local government with notice at a time when it can conduct its own investigation of the incident while the evidence is still fresh so as to ascertain the character and extent of the injury and the responsibility the local government may have for it. *See id.* The notice must be in writing and must state the time, place, and cause of the injury. Md. Code Ann., Cts. & Jud. Proc. § 5–304(b)(2). Although the notice may be delivered "in person," nothing in the statute suggests, as Edwards argues, that verbally communicating the notice suffices. *Id.* § 5–304(c). Finally, the LGTCA requires that, for a claim based on events in Montgomery County, any notice of claim must be provided to the County Executive. *Id.* § 5–304(c)(3)(ii).

Although Edwards argues that she strictly complied with the LGTCA, she never claims to have delivered notice of her MFEPA claims, in writing, to the County Executive; instead, she asserts that she complied with the LGTCA by verbally communicating her MFEPA claim to Benton, filing an internal EEO complaint, or filing an EEOC complaint. None of these actions qualify as strict compliance with the LGTCA.

### C.    Substantial Compliance

In the absence of strict compliance, Maryland courts have permitted substantial compliance to satisfy the notice requirement. Substantial compliance occurs "when notice is provided to the entity responsible for investigating the tort claim." *White v. Prince George's Cty.*, 877 A.2d 1129, 1139 (Md. Ct. Spec. App. 2005). Substantial compliance can also be achieved when the local government is made aware of its possible liability, such as by notice to the local government's insurer or another entity that has authority to settle tort claims "unilaterally." *Faulk v. Ewing*, 808 A.2d 1262, 1277 (Md. 2002). This concept of substantial compliance was codified in 2016, when the Maryland General Assembly added the following

provision to the LGTCA: "This section does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect of circumstances giving rise to the claimant's injury." Md. Code Ann., Cts. & Jud. Proc. § 5–304(e).

Because Edwards has conceded that all of her MFEPA claims except those under Counts IV and V are time-barred by MFEPA's statute of limitations, none of the alleged forms of constructive notice, including Edwards's October 2014 verbal communication to Benton, her December 2014 internal EEO complaint, and her November 2015 EEOC complaint, can constitute substantial compliance with the LGTCA's notice provision because all occurred prior to the accrual in January 2017 of her claims in Counts IV and V. Accordingly, Edwards has not substantially complied with the notice provision of the LGTCA.

### D.    Good Cause Exception

The LGTCA provides that a plaintiff who fails to provide the requisite notice can still proceed if good cause exists for non-compliance and if the defendant has not shown that its defense has been prejudiced by the lack of notice. Md. Code Ann., Cts. & Jud. Proc. § 5–304(d). The test for whether good cause exists is whether the plaintiff pursued the claim "with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 761 A.3d 56, 63 (Md. 2000). Good cause can include excusable neglect or mistake, serious physical or mental injury, the plaintiff's location out of state, the inability to retain counsel in a complex case, ignorance of the statutory requirement, or misleading representations by government representatives. *Rios*, 872 A.2d at 22-23. Of these grounds, the only potentially relevant bases are that Edwards was unaware of the statutory requirement or that she was unable to retain counsel.

According to the Amended Complaint, Edwards retained counsel in this matter at some point between April 28, 2017 and August 14, 2017.  Thus, although  Edwards was unrepresented when her MFEPA claims in Counts IV and V accrued in January 2017, she had retained counsel approximately five months prior to the expiration of the one-year notice period in January 2018.  Md. Code Ann., Cts. & Jud. Proc. § 5–304(b)(1).   During that time period, counsel was sufficiently involved in the issues at the heart of this case—Montgomery College's alleged failure to provide reasonable accommodations for Edwards's disability—that he represented Edwards at the August 2017 EEOC fact-finding conference.  Thus, Edwards cannot claim good cause arising from an inability to retain counsel.  Nor do any possible errors by counsel provide good cause.  *See Ransom v. Leopold*, 962 A.2d 1025, 1035 (Md. Ct. Spec. App. 2008) (upholding the district court's finding that an attorney's mistake in mailing the notice of claim to the wrong county attorney did not constitute good cause for failing to comply with the LGTCA notice requirement).

Accordingly, because Edwards failed to comply with the LGTCA notice requirement for the two remaining MFEPA in Counts IV and V of the Complaint, they will be dismissed.

## V.       Failure to State a Claim

Where all of Edwards's claims under the ADA and MFEPA, as well as her Rehabilitation Act claims in Counts I, II, and III, will be dismissed, the Court need only address Defendants' argument that Edwards failed to state a claim upon which relief may be granted as to Counts IV and V under the Rehabilitation Act.

### A.       Count IV:  Retaliation

In Count IV, Edwards alleges that Defendants retaliated against her for filing an EEO complaint through Montgomery College's internal procedures in December 2014 and filing an

EEOC complaint in November 2015, which was formally processed as a charge in May 2016. She states that, as retribution for this protected activity, Defendants assigned her classrooms "that were in multiple buildings when her doctor's accommodation explicitly stated 'limited walking' and 'all classes in same building,' and where the Defendant had previously scheduled Plaintiff's classes in one building the prior semester, before she made contact with the EEOC." Am. Compl. ¶ 137. Edwards also suggests that Defendants retaliated against her by failing to provide adequate, non-hazardous chairs in her classrooms after she engaged in protected EEO activity.

As a preliminary matter, Edwards's Amended Complaint is internally inconsistent as to whether in January 2017, her classes were scheduled in separate buildings or just some distance apart in the same building. *Compare* Am. Compl. ¶ 137 (describing classes in separate buildings) *with* Am. Compl. ¶ 83 (referencing the length of hallways in the Humanities Building). One of the exhibits to the Amended Complaint is an email that appears to contain her January 2017 class showing that all of her classes were scheduled in the Humanities Building. 1/20/17 Email at 3, Am. Compl. Ex. 8, ECF No. 11-3. In either case, for the purposes of a Motion to Dismiss, the Court will interpret Count IV as alleging that Edwards's classes were scheduled in locations sufficiently far apart that it was more difficult for Edwards to get to each classroom in January 2017 than in the most recent semester in which she taught classes.

To establish a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must show (1) that the plaintiff engaged in protected activity, (2) that the defendant took an adverse action against the plaintiff, and (3) that the adverse action was causally connected to the protected activity. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Although it is not

strictly necessary for a plaintiff to establish all elements of a *prima facie* case in the complaint, a plaintiff must allege sufficient facts to support a plausible inference of discrimination or retaliation and thereby raise a right to relief above the speculative level. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

As for the first prong, Defendants do not dispute that Edwards's EEO activity qualifies as protected activity. Regarding the second prong, Defendants argue, citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999), that the alleged failure to accommodate does not constitute an adverse action for purposes of a retaliation claim under the Rehabilitation Act, because an adverse employment action must consist of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Mot. Dismiss at 12, ECF No. 12-1. *Boone*, however, discussed the definition of adverse employment action for a discrimination claim, not a retaliation claim. *Boone*, 178 F.3d at 255-56. In *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006), the Supreme Court held that for a retaliation claim, the required materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Edwards, as an individual with a disability under the Rehabilitation Act, would likely have been dissuaded from engaging in EEO activity if she knew that such activity would cause her employer to refuse to provide a reasonable accommodation and schedule her classes in locations that were farther apart than before she filed her EEOC charge. Thus, she has alleged a materially adverse action.

Finally, Defendants argue that Edwards has failed to show that the alleged adverse action was causally connected to her protected activity because the action occurred long after the EEO activity. A causal connection may exist "where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Though the passage of time tends to negate the causal connection inference, *id.*, temporal proximity is not the sole means by which a plaintiff can show causation. *See, e.g., King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that where the plaintiff was a teacher, the end of the academic year was the natural decision point for an adverse action, making it likely that any discharge, lawful or unlawful, would come at that time); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (finding a causal connection in reliance on all of the evidence developed in the case, not just temporal proximity). Moreover, the protected activity need not be limited to the formal EEOC charge; rather, follow-up hearings and communications stemming from the original charge may trigger a materially adverse action. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (stating that "[t]ypes of indirect proof to be considered in finding a causal nexus may include the temporal proximity of factual hearings regarding discrimination complaints as well as the actual date of filing").

Here, although Edwards first reported alleged disability discrimination to the EEOC in 2015, her EEOC charge was not formally filed until May 2016. As in *King*, Edwards alleges that the adverse action she suffered under Count IV came at a natural decision point: the start of the Spring 2017 semester when she received her class schedule. *See King*, 328 F.3d at 151 n.5. Edwards suggests that this was the first semester following the May 2016 filing of her EEOC charge during which she taught classes, and she states that in the semester prior to her EEOC charge, her classes had been arranged in a manner consistent with her request for

accommodation. Considering the allegations in the light most favorable to Edwards, as is required on a motion to dismiss, the Court concludes that Edwards has sufficiently alleged that her protected activity caused Defendants to provide her a less favorable January 2017 schedule. Moreover, Edwards also asserts that she physically went to the Baltimore EEOC Field Office on January 26, 2017 to report the problem with her new class schedule. Just five days later, on January 31, 2017, Edwards requested a chair in her classroom, which was never delivered. Although the failure to provide a chair would not necessarily constitute a materially adverse action by itself, that episode may be considered on the broader issue of the motivation and causation for the January 2017 class schedule. Collectively, Edwards's allegations are sufficient to state a retaliation claim under the Rehabilitation Act. Defendants' Motion to Dismiss the Count IV Rehabilitation Act claim will therefore be denied.

### B.     Count V:  Failure to Accommodate

Edwards argues that the events underlying her Count IV retaliation claim—namely, her classroom assignments and hazardous or missing classroom chairs in late January 2017—also constitute a failure to provide a reasonable accommodation in violation of the Rehabilitation Act. To establish a failure to accommodate claim under the Rehabilitation Act, a plaintiff must show that (1) the plaintiff has a disability; (2) the employer knew of the disability; (3) with reasonable accommodations, the plaintiff is otherwise qualified to perform the essential functions of the employment position in question; and (4) the employer refused to make such reasonable accommodations. *Reyazuddin*, 789 F.3d at 413. A "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 29 C.F.R. § 1630.2(g)(1)(i) (2018) (defining "disability" for purposes of the American with Disabilities Act); *see also* 29 U.S.C. § 794 (stating that the standards used to

determine a violation of the Rehabilitation Act for employment discrimination "shall be the standards applied" under the Americans with Disabilities Act); *Reyazuddin*, 789 F.3d at 413 ("Employment discrimination claims brought under [the Rehabilitation Act] are evaluated using the same standards as those applied under Title I of the Americans with Disabilities Act of 1990"); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) (stating that because the language of the Americans with Disabilities Act and the Rehabilitation Act is "substantially the same, we apply the same analysis to both"). "Reasonable accommodations" are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is desired or customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii) (defining reasonable accommodation under the Americans with Disabilities Act); *see also* 29 U.S.C. § 794; *Reyazuddin*, 789 F.3d at 413.

In Count V, Edwards has sufficiently pleaded a failure to accommodate claim under the Rehabilitation Act. The Amended Complaint asserts that Edwards has a disability in that her torn patella and rheumatoid arthritis substantially limit her ability to walk long distances. Edwards also recounts her various notifications to her supervisors of her condition, including providing notes from her doctor attesting to her disability and engaging in various in-person meetings and email exchanges with her supervisors regarding her requests for accommodation.

Although Defendants argue that Edwards has not sufficiently pleaded that she is otherwise qualified to perform the essential functions of her job, Edwards has asserted in the Amended Complaint that she began working at Montgomery College as a professor in 1989 and did not require a reasonable accommodation until 2002; that she was able to teach classes with an accommodation from 2002 to 2013; and that she requested accommodations on various

occasions from 2013 to 2017, consisting of classroom assignments in the same building, same floor, or same room, and a functioning chair or stool in her classroom. She continued to work at various times during that period. These allegations support the inference that Edwards could perform the essential functions of her job so long as she did not have to walk long distances between classes and could sit in a chair or stool during class as needed.

Finally, Edwards alleges that Montgomery College denied her requests for reasonable accommodations. Specifically, in January 2017, she requested that her classes be scheduled in the same room or neighboring rooms, and that a functioning chair be placed in her classrooms. Defendants contend that Edwards's proposed accommodations are not reasonable and assert that "Plaintiff was, in fact, accommodated in January 2017, in accordance with her doctor's note provided to Defendant which simply requested 'limited walking all of her classes in the same building.'" Def. Reply at 13, ECF No. 15. However, viewing the Amended Complaint in the light most favorable to Edwards, the Court cannot conclude that Edwards's proposed accommodations are facially unreasonable or would not enable her to complete the essential duties of her position. Defendants will have the opportunity, at a later stage of the litigation, to present evidence to support their claim that assigning all of Edwards's classes to the same or an adjacent classroom is not a reasonable accommodation. Because the Amended Complaint has asserted in Count V facts supporting each element of a failure to accommodate claim under the Rehabilitation Act, the Court will deny the Motion as to that claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is granted to the extent that the President of Montgomery College is dismissed as a Defendant, all ADA and MFEPA claims are dismissed, and the Rehabilitation Act claims in Counts I-III are dismissed. The Motion to Dismiss is DENIED as to the Rehabilitation Act claims in Counts IV and V. A separate Order shall issue.

Date: October 9, 2018

THEODORE D. CHUANG
United States District Judge